UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

JULIE K. O'BRIEN,                                :

               Plaintiff,             :   19 Civ. _____

   - against -                              :   <u>COMPLAINT</u>

STUART FINKEL,                                   :   <u>JURY TRIAL DEMANDED</u>

              Defendant.              :

------------------------------------- x

Plaintiff Julie K. O'Brien, by her attorneys named below, for her complaint against defendant Stuart Finkel, respectfully alleges:

**Jurisdiction**

1. The jurisdiction of this Court over the within action rests upon 28 U.S.C. § 1332(a)(1), in that there is complete diversity of citizenship between plaintiff and defendant, and the amount in controversy, without interest or costs, exceeds the sum or value specified by 28 U.S.C. § 1332(a), all as more fully appears below.

**Nature of the Action**

2. This is an action to recover damages under Section 213-c of the New York Civil Practice Law and Rules for a criminal sex act committed by defendant in violation of New York Penal Law Section 130.50, under the New York City Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code §§ 8-901 *et seq*., and for intentional and negligent infliction of emotional distress. The action seeks compensatory and punitive damages of $10 million.

**Parties**

3.      Plaintiff Julie K. O'Brien is a citizen of the State of Massachusetts, residing in Marshfield, Massachusetts.

4.      Defendant Stuart Finkel ("Finkel") is a citizen of the State of New York, residing in Katonah, New York.

**Factual Allegations Common to All Claims for Relief**

5.      Plaintiff is a women 48 years of age.  She is the divorced mother of two daughters.  Until the precipitous (and perhaps unlawful) termination of her employment on September 11, 2019, plaintiff worked as a marketing manager for PWC (the former Price Waterhouse Coopers), an international accounting and consulting firm whose revenues in its last year exceeded $42 billion.  Plaintiff had commenced her employment with PWC some 25 years ago.  She had taken leave for several years to have and raise her daughters.  All in all, plaintiff worked for PWC in various capacities for roughly 22 years.

6.      Defendant Finkel is a male individual who either worked or currently works as a tax accountant for PWC.

7.      Plaintiff has been advised that PWC terminated Finkel's employment as a result of the facts alleged below.

8.      Plaintiff first met Finkel some 23 years ago in connection with her work for PWC.  At first, they dated several times, but their relationship never developed into either a sexual or a romantic relationship.  Plaintiff stopped dating Finkel when she learned from a third party that he was about to get married and had not told her.

9.      The relationship between plaintiff and Finkel continued over many years as one between colleagues and friends. They would meet for dinner or drinks often when

2

plaintiff was in New York for her work.  Plaintiff lived in Massachusetts, but was required by PWC to be in New York frequently.

10. When plaintiff was in New York for work, she stayed in a hotel, paid for by PWC.  That hotel was almost exclusively the Langham Hotel New York (the "Langham") located at 400 Fifth Avenue, New York City.

11. Plaintiff traveled to New York in or about 2015 in connection with her work.

12. Plaintiff and Finkel had planned to have dinner together during her visit.  They were having drinks at the Langham in advance of dinner, and Finkel had with him an expensive briefcase made of ostrich leather.  Finkel had several drinks, but did not appear drunk or impaired.

13. Finkel told plaintiff he wanted to leave the briefcase in her hotel room as he was reluctant, because of its value, to leave it in a checkroom.  She agreed that he could and escorted him to her room.

14. As soon as they had entered the room, Finkel suddenly attacked plaintiff.  He pushed her onto a bed.  He ripped her blouse.  She said to him, "You don't want to do this."  He stopped.  He apologized.

15. Plaintiff regarded this incident as an anomalous act in an otherwise good friendship.  They did not discuss it further.

16. Plaintiff again traveled to New York in connection with her work in late October 2017.  She stayed at the Langham, where she had been upgraded to a suite.

17. Plaintiff and Finkel planned to have dinner on October 24, 2017, and Finkel told her that he had made a restaurant reservation at a restaurant outside the Langham. They planned to meet at the restaurant.

18. Instead, Finkel showed up at the Langham, where he phoned plaintiff in her suite. She came down to the lobby. He explained that he had had second thoughts because it was raining, and suggested they eat dinner at the restaurant in the Langham. Plaintiff agreed.

19. Both plaintiff and Finkel were wearing casual work clothes. Plaintiff was wearing a one-piece black dress. She had on a bra, but as a matter of custom often did not wear panties. She was partially nude under the dress.

20. Finkel had several drinks at dinner, but did not appear impaired or inebriated. After dinner, he excused himself to go to the bathroom, and when he returned, he told plaintiff he had a "bathroom issue," and wondered if instead of the public bathroom he could use the bathroom in her suite. She agreed.

21. When they entered the suite, Finkel went directly to the bathroom. Plaintiff waited in the entry vestibule of the suite next to a secretary or desk on which was a hotel telephone.

22. In minutes Finkel emerged from the bathroom. He had removed his clothes and was naked.

23. Without saying anything, Finkel forcibly pushed plaintiff against a wall. Before she could react, he ripped off her dress, pulling it over her head with both hands. While doing this he reached for her neck and choked her. She began to resist, but he pulled her hair painfully. She later realized that he had torn a large hank of hair from her scalp. Plaintiff was

then nude below the waist and shocked by Finkel's actions.  She was frozen.  She could not move or react further.

24.  In seconds Finkel forcibly and violently penetrated plaintiff both vaginally and anally with his fingers and hand.  His attack was sufficiently violent that it left plaintiff sore the next day in the areas he had penetrated.

25.  In a few more seconds, plaintiff recovered her wits.  She pushed Finkel off her.  As plaintiff had stayed at the Langham often, she knew the extension to call for security.  She knocked the phone on the desk next to her from its hook, and managed to press the correct button.  She yelled that she needed security in her room.

26.  Finkel, who was still standing in the vestibule outside the bathroom nude, heard what plaintiff was yelling and quickly returned to the bathroom.

27.  Plaintiff went to the bedroom of the suite where she donned a robe.  The black dress was laying on the floor of the vestibule.  Security personnel arrived within minutes.

28.  At that point, Finkel emerged from the bathroom.  He was wearing clothes, but neither shoes nor socks, which he was carrying in his hands.  He was immediately escorted from the room by security personnel.  Plaintiff did not see him again that night.  Plaintiff has not spoken to him since the attack.

29.  Plaintiff told security personnel what had occurred.  Security personnel asked if she needed a doctor.  She declined.

30.  Security personnel suggested that she should file a police report of the assault.  Again she declined.

31. In the aftermath of this attack, plaintiff was upset and scared by what had occurred. She called her boyfriend on the West Coast. She told him she had been assaulted by a co-worker, but did not specifically report the nature of the assault.

32. Finkel made several attempts to communicate with plaintiff after the attack. He left her a voicemail either the evening of the attack or the early morning after the attack. In the voicemail, he said he was "sorry, sorry, sorry" for the events of that evening.

33. Finkel made several attempts to communicate with plaintiff after the attack. He also texted plaintiff several times in the two years following the assault. Plaintiff did not respond.

34. Plaintiff, who was traumatized as a result of a sexual assault (only made worse since she knew her attacker and considered him a long-time friend) became anxious and depressed. She began to take prescription medication for anxiety. She had never needed medication for anxiety before.

35. Plaintiff's work habits and routine changed. She wanted to avoid Finkel, and although in prior years she had traveled to New York perhaps twice a month, she began to restrict her travel, either dialing in by telephone when needed from Massachusetts, or if she had to be in New York, arranging not to stay overnight.

36. She generally avoided Finkel, did not want to see Finkel, and avoided being in any part of her workplace where he might appear. Her work performance, which had been excellent and outstanding for years, deteriorated.

37. As plaintiff's work performance suffered, she ultimately was placed on a personal improvement plan. She informed the human resources department of PWC about the attack by Finkel, and was advised that an investigation would be conducted. She was later

advised that the investigation found that her report was credible, and that Finkel would be terminated from PWC.

38. PWC terminated plaintiff's employment on September 11, 2019. Her career with PWC, which had begun some 25 years before, was at an end.

## FIRST CLAIM FOR RELIEF
### (For Criminal Sexual Act under CPLR 213-c)

39. Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "38" of this complaint as if fully set forth at length herein as paragraph "39" hereof.

40. The foregoing factual allegations constitute a violation by Finkel of Section 130.50 of the New York Penal Law (Criminal Sexual Act in the First Degree).

41. Section 213-c of the New York Civil Practice Law and Rules gives a person injured by such a violation a civil cause of action for damages.

42. At the time of the acts alleged, CPLR § 213-c provided for a five-year statute of limitations.

43. By reason of his conduct as described in this complaint, defendant Finkel violated the rights secured to plaintiff under law.

44. Defendant Finkel's conduct as described in this complaint was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

45. Plaintiff is entitled to recover damages under CPLR § 213-c for her physical, psychological, and other injuries resulting from Finkel's conduct. Such damages include compensatory and punitive damages for the pain, suffering, and physical insult she sustained by reason of Finkel's criminal sex act, and damages for all resulting injury.

## SECOND CLAIM FOR RELIEF
### (For Violation of the New York City Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code §§ 8-901 *et seq*.)

46. Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "44"of this complaint as if fully set forth at length herein as paragraph "45" hereof.

47. Section 8-904 of the Victims of Gender-Motivated Violence Protection Act, New York City Administrative Code §§ 8-901 *et seq*. (the "Act"), gives a victim of gender-motivated violence a private right of action to sue the perpetrator for compensatory and punitive damages, for injunctive relief, and for other relief, including attorneys' fees and the costs of suit.

48. Defendant Finkel's conduct described in this complaint constitutes a "crime of violence" as such crimes are defined in Section 8-903 of the Act.

49. Defendant Finkel committed at least the following crimes punishable as felonies or misdemeanors under New York law: New York Penal Law § 120.00 (Assault in the third degree, Class A misdemeanor); § 120.05 (Assault in the second degree, Class D felony); § 120.10 (Assault in the first degree, Class B felony); § 120.14 (Menacing in the second degree, Class A misdemeanor); § 120.15 (Menacing in the third degree, Class B misdemeanor); § 130.20 (Sexual misconduct, Class A misdemeanor); § 130.25 (Rape in the third degree, Class D felony); § 130.35 (Rape in the first degree, Class B felony); § 130.50 (Criminal Sexual Act, First Degree felony); § 130.52 (Forcible touching, Class A misdemeanor); § 130.55 (Sexual abuse in the third degree, Class B misdemeanor); § 130.65 (Sexual abuse in the first degree, Class D felony); and § 240.25 (Harassment in the first degree, Class B misdemeanor).

50. Defendant's conduct presented a serious risk of injury to plaintiff and actually resulted in injury to plaintiff. Defendant's conduct was directed against plaintiff.

51. Defendant's conduct constituted a crime of violence motivated by gender in that he committed the crime because of gender or on the basis of gender, and the commission of the crime was due, at least in part, to an animus based on plaintiff's gender, satisfying the requirements of Section 8-904 of the Act.

52. By engaging in the foregoing conduct, defendant Finkel violated the Act, and plaintiff was injured thereby.

53. Under the Act, a person injured by prohibited conduct is entitled to recover compensatory and punitive damages, attorneys' fees and costs of suit, and other relief appropriate to the circumstances.

54. Plaintiff is entitled under the Act to recover compensatory and punitive damages as against defendant Finkel in the amount of $10 million, or in such other amount as the trier herein may determine.

55. Plaintiff is also entitled to recover her costs incurred for medical and related care resulting from Finkel's conduct, and her attorneys' fees incurred herein as well as the costs and expenses of this suit.

### THIRD CLAIM FOR RELIEF
### (Intentional Infliction of Emotional Distress)

56. Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "54" of this complaint as if fully set forth at length herein as paragraph "55" hereof.

57. Defendant Finkel engaged in extreme and outrageous conduct with the intent to cause plaintiff severe emotional distress. Finkel's conduct was so outrageous in

character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

58. Defendant Finkel's conduct caused plaintiff serious and substantial injury in the form of severe emotional distress.

59. By reason of the foregoing, defendant Finkel committed the tort of intentional infliction of emotional distress against plaintiff.

60. Plaintiff is entitled to recover her compensatory and punitive damages as against defendant Finkel in the aggregate amount of $10 million, or in such other amount as the trier herein may determine.

### FOURTH CLAIM FOR RELIEF
### (Negligent Infliction of Emotional Distress)

61. Plaintiff repeats and realleges each allegation contained in paragraphs "1" through "60" of this complaint as if fully set forth at length herein as paragraph "61" hereof.

62. In his conduct toward plaintiff described in this complaint, including, but not limited to, his sexual battery, defendant Finkel breached a duty of care toward plaintiff, exposing her to an unreasonable risk of bodily injury.

63. As a direct result of this breach, plaintiff suffered severe emotional harm and mental injury.

64. In engaging in the conduct described in this complaint, defendant Finkel acted recklessly and negligently, ignoring the risk of substantial and serious injury to plaintiff.

65. Extreme and outrageous conduct.

66. By reason of the foregoing, defendant Finkel committed the tort of negligent infliction of emotional distress against plaintiff.

67. Plaintiff is entitled to recover her compensatory and punitive damages as against defendant Finkel in the aggregate amount of $10 million, or in such other amount as the trier herein may determine.

WHEREFORE, plaintiff demands judgment against defendant Finkel in the sum of $10,000,000, or in such other or further sum as the trier herein may determine, together with applicable prejudgment interest, the attorney's fees and costs of this action, and such other and further relief as the Court may deem just and proper in the circumstances.

Dated:   New York, New York
         November 12, 2019

                              KARLINSKY LLC

                              By: /s/ Martin E. Karlinsky
                                   Martin E. Karlinsky, Esq.
                                   Bonnie H. Walker, Esq
                              103 Mountain Road
                              Cornwall-on-Hudson, New York 12520
                              (646) 437-1430
                              martin.karlinsky@karlinskyllc.com
                              bonnie.walker@karlinskyllc.com

                              *Attorneys for Plaintiff*